## UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH CAROLINA

## FLORENCE DIVISION

| | | |
|---|---|---|
| REBECCA PETERS-MONE | ) | |
| AND STACEY J. DALBEC, | ) | |
| INDIVIDUALLY AND AS | ) | |
| CLASS REPRESENTATIVES, | ) | |
| | ) | |
| Plaintiffs, | ) | C/A No: 4:06-cv-01326-TLW |
| | ) | |
| vs. | ) | |
| | ) | **PLAINTIFFS OPPOSITION TO** |
| VANDERBILT MORTGAGE | ) | **DEFENDANT'S MOTION TO** |
| AND FINANCE, INC., AND | ) | **DISMISS WITH MEMORANDUM** |
| CLAYTON HOMES, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

The Plaintiffs, Rebecca Peters-Mone and Stacey J. Dalbec, hereby submit this Objection to the Defendant, Vanderbilt Mortgage and Finance Inc.'s Motion to Dismiss filed August 7, 2006.

The Defendant claims that it is entitled to the relief requested in it's Motion based upon it's assertion that the Plaintiffs have failed to state a claim upon which relief can be granted (See Rule 12(b)(6) of the Federal Rules of Civil Procedure). The law in South Carolina is that "A judgment on the pleadings is considered to be a **drastic** procedure by our Courts." *Russell v. City of Columbia*, 305 S.C. 86, 89, 406 S.E.2d. 338, 339 (1973). *See also Stroud v. Riddle* 260S.C. 99, 102, 194 S.E.2d

235, 237 (1973).

Plaintiffs would show that the Defendant's motion should be denied upon the following grounds, to wit: 1) The Motion is premature, 2) The Motion lacks an evidentiary and legal basis and thus is wholly without merit, 3) The Motion is just a delaying tactic of the Defendant in it's hopes to stall the commencement of discovery and delay the Plaintiffs filing of their Motion for Class Certification and 4) The Plaintiffs have stated claims upon which relief can be granted.

The Plaintiffs Second Amended Complaint contains specific allegations of material facts in support of the Plaintiffs causes of action for: 1) Injunctive relief, 2) Declaratory relief, 3) Negligence, 4) Negligence Per Se, 5) Invasion of Privacy and 6) The Intentional Infliction of Emotional Distress.  That said Second Amended Complaint contains a very important exhibit.  This exhibit is a hand written list of the numerous telephone calls made by VMF to the Plaintiff, Rebecca Peters-Mone.  The list shows that VMF called her either at home or on her cellular telephone constantly, frequently, illegally and repeatedly.  These calls by VMF to just one customer which are documented in Ms. Peters-Mone's attached affidavit are sworn, under penalty of perjury, to be true.  The Plaintiffs would show, by way of this sworn affidavit and the sworn affidavit of the Plaintiff Stacey Dalbec which is included in this Objection, that they have presented sufficient

factual evidence which supports each and every one of their claims including their claim for injunctive relief. It is now factually established that VMF uses it's telephones to engage in harassment that is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency. It's hundreds of harassing telephone calls to the Plaintiffs are not isolated incidents and is inferential evidence that this activity has been perpetrated upon all of it's mortgage customers (potential class members) who do not pay their bills in advance and or prior to the due date.

It is an intentional company policy and standard operating procedure for VMF to conduct it's business in such a way as to daily abuse good, decent hard working American citizens. This policy and conduct should stop and end immediately. It is clear that VMF owes the Plaintiffs and all other mortgage customers it "services" and daily abuses a duty to act in a way and manner that does not violate the covenant of good faith and fair dealing that exists between the parties as part of and through their contractual relationship.

VMF has violated and breached the covenant of good faith and fair dealing and has done so intentionally, maliciously, negligently and repeatedly without any consideration or concern whatsoever of, to and for the legal rights of the Plaintiffs and all other potential class members. Their acts and conduct must be

declared illegal and a permanent injunction issued and imposed against VMF in order to stop it's atrocious and utterly intolerable conduct.

The Plaintiffs have stated a valid claim for injunctive relief and are entitled to injunctive relief since they and other class members have suffered irreparable harm as a direct and proximate result of the acts and or delicts of VMF.  As proven and established in the Plaintiffs attached sworn affidavits, they along with all other class members know exactly what it feels like to live in constant emotional distress, fear and dread of answering their telephone at home or at their places of work.  A civilized society should not, and can not, allow it citizens to be subjected to the abuse and torture that VMF has perpetrated upon the Plaintiffs and all other class members.

The Plaintiffs and all of VMF's other mortgage customers also know first hand what it feels like to know that VMF is calling their relatives and family members and pumping them for contact information in order to "track them down" like a hunted animal.  A jury must be allowed to hear live and direct testimony from these victims and give them the justice they so rightfully deserve. A jury needs to hear from the Plaintiffs and all other class members what it feels like to be emotionally traumatized by being subjected to as many as eight collection telephone calls in one day from a mortgage company.

Plaintiffs would show unto this Honorable Court that they have presented sufficient evidence to prove that VMF has engaged in a pattern and policy of violating South Carolina and Federal law, including but not limited to, committing negligent acts in the course of managing and or collecting it's mortgage accounts, violating the Plaintiffs right to privacy and it's intentional infliction of severe emotional distress upon it's customers.  The sworn affidavits establish to this Court that this case involves outrageous conduct and harassment by VMF that is far more than just a mere annoyance, petty oppression or indignity.  VMF's harassing conduct, harassing communications and it's negligence, intentional infliction of emotional distress and violation of the Plaintiffs privacy rights has caused severe emotional distress to the Plaintiffs and their families.  Such shocking intentional conduct by VMF magnified hundreds of thousands of times goes beyond all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community.

As the Court can clearly see, the Plaintiffs and all other class members have suffered great and irreparable harm as a direct and proximate result of VMF's illegal and criminal conduct.  The Plaintiffs would show that these harassing collection telephone calls made by VMF are not isolated incidents.  Companies the size of VMF, with it's thousands of employees, have policies,

guidelines and procedures that it requires that their employees follow and perform.  It is more probable than not that in this case VMF evaluated all of it's One Hundred and Ninety Thousand mortgage account customers to ascertain which ones it felt needed to be harassed.  Once they commenced the harassment it tracked which customers were responding by sending in their payments at the earliest possible time during the grace period and which ones were not.  The persons who were not responding and complying in a manner VMF deemed satisfactory were then targeted and subjected to even more aggressive telephone harassment.  VMF performed this scheme and acts of negligence by inputting the targeted customers names and telephone numbers into their telephone and computer systems.  This procedure thereby allowed them to program and fine tune the intensity of their telephone harassment.

In the case of *Wise v. Broadway, 315 S.C. 273, 433 S.E.2nd 857 (1993)*, the Court held that "The causative violation of a statute constitutes negligence per se and is evidence of recklessness and willfulness, requiring the submission of the issue of punitive damages to the jury."  It is well settled that negligence per se is negligence arising from the Defendant's violation of a statute. See *Coleman v. Shaw*, 281 S.C. 107, 314 S.E.2d 154 (Ct.App.1984).  *See also* 28 Words and Phrases

*Negligence Per Se* 683 (1955)(citing *Boylston v. Armour & Co.* 196
S.C. 1, 12 S.E.2d 34 (1940).

Negligence per se simply means the jury need not decide if
the defendant acted as would a reasonable man in the
circumstances.  The statute fixes the standard of conduct of the
defendant, leaving the jury merely to decide whether the defendant
breached the statute.

The question of whether a common law duty is owed by VMF
to the Plaintiffs must be answered in the affirmative.

It is well settled that there is no formula for determining
duty; a duty is not sacrosanct in itself but only and expression
of the sum total of those considerations of policy which lead the
law to say that a particular Plaintiff is entitled to protection.
Suffice it to say that a multiplicity of factors come into play
when courts contemplate the question of duty.  These factors
include the policy of deterring future tortfeasors, the moral
culpability of the tortfeasor and numerous other conceivable
factors; duty is seen in general terms as requiring a person or
corporation to conform his or its conduct to a standard which is
adequate to protect others from unreasonable risk of harm. *Araujo
v. Southern Bell Telephone and Telegraph Company, 291 S.C. 54, 351
S.E.2nd 908 (1986).* See, Prosser and Keaton *On The Law of Torts*,
Chapter 9, Section 53 (5th ed. 1984)(thorough discussion of the law
of duty and its development in the common law).

Even assuming that the Defendant is entitled to have the claims of the individual named Plaintiffs dismissed prior to certification, that does not automatically moot the class action as the Court held in *Martinez-Mendoza v. Champion International Corp., 340 F.3d. 1200 (11th Cir. 2003).*

Plaintiffs would show unto this Honorable Court that VMF has engaged in a policy of unrelenting and persistent telephone harassment and unlawful disclosure of private account information of and concerning it's mortgage account customers. This is proven and established by the evidence contained in and by the sworn affidavit of the Plaintiff, Rebecca Peters-Mone, a copy of which is attached hereto and incorporated by reference herein as Exhibit "A" as well as the sworn affidavit of the Plaintiff, Ms. Stacey Dalbec, a copy of which is attached hereto and incorporated by reference herein as Exhibit "B".

These sworn and un-controverted affidavits provide valuable information and evidence for the Court to consider in making it's ruling on the Defendant's motion. The Plaintiffs would show that these two sworn affidavits give factual support the Plaintiffs allegations and requests for relief in the Second Amended Complaint. Plaintiffs would show unto this Honorable Court that their sworn factual evidence of wrongdoing, unlawful activity and negligence of VMF is just the "tip of the iceberg" and that

additional evidence could be obtained after discovery has commenced since VMF and other third parties would be legally required to comply with Plaintiffs counsel's discovery requests and Subpoenas Duces Tecum.

Contrary to what the Defendant contend is the law in it's memorandum, Plaintiffs do have a private right of action against VMF for injunctive relief and their damages for it's violation of Section 16-17-430 of the South Carolina Code of Laws.

The South Carolina Court has examined the issue of whether a person has a cause of action for a violation of a statutory prohibition in previous cases involving alcohol consumption and injuries.  In the 2005 case of *Marcum v. Bowden, (Opinion Number 26035)* the Supreme Court of South Carolina decided to create a civil duty and liability where one had non existed before for a statutory criminal law violation of Sections 61-4-90 and 61-6-4070 of the South Carolina Code.  These Code sections make it unlawful for a person to transfer or give alcohol to a person under twenty-one years of age.  The Court in *Bowden* noted that there "is no statute in South Carolina regarding civil liability for a person who sells or gives alcohol to an underage person" yet the Court ruled that "the imposition of liability is based on the fact that the host violated state statutes providing that the transfer or gift of alcohol to an underage person is a criminal misdemeanor".

The Court went on to state that it's ruling was supported by

public policy grounds and considerations including efforts to deter minors from consuming alcohol and the protection of immature persons.

In the case at bar, public policy grounds and considerations such as protecting the privacy rights of the Plaintiffs and other class members who own telephones are involved since the use of one's telephone involves substantial privacy interests and Section 16-17-430 seeks to protect that interest from an invasion made in a shocking manner. *State v. Brown, 274 S.C. 506, 266 S. E. 2nd 64 (1980).* Section 16-17-430 seeks to protect a segment of society, persons who have telephone service, either land line or cellular and the Plaintiffs and other class members are the ones that the statute is designed to protect since they have land lines and cellular telephone service.

In addition to what the Defendant claims the Statute prohibits, "criminalizing obscene or threatening communications", it **also** criminalizes harassing and coercive communications. VMF uses harassing telephone calls in order to coerce it's mortgage account customers into paying their mortgage payments at the earliest possible time during the grace period. By doing this VMF can invest these monies in their interest bearing financial accounts, accounts owned by Clayton Homes and the bank that it owns and controls and quite possibly Berkshire Hathaway, the

parent Conglomerate.  These deposits, earnings and interest are credited to VMF's accounts the day VMF deposits their customers payments into their accounts so the sooner it can get it's customers to pay and deposits those payments, the more money it will make. Therefore they have a motive and incentive to make their customers pay their payments at the earliest possible time in order to benefit from the additional time that their monies are earning interest.

VMF is part of Bershire Hathaway Inc. which is a Fortune 500 company.  It maintains vastly superior strength, power, resources and knowledge in comparison to it's customers who, for the most part, are members of the working class, unsophisticated in financial affairs and non college educated.  These unequal positions can lead to an abuse of power as has occurred in this case.  Notwithstanding that, the Defendant claims that the aforementioned statute was not intended to apply to telephone calls made by a creditor, in this case his client VMF, to a debtor, in this case the Plaintiffs and all other class members, when a payment is past due.  The Plaintiffs would show that VMF's claim of some sort of magic creditor immunity from liability and or prosecution is pure fantasy.  In fact, the statute is not designed to protect the general public as the Defendant claims since many people do not have a telephone line registered in their own name and use friends or relatives phone numbers and service.

The Plaintiffs would show that the aforementioned statute was designed and intended to protect their specific class of persons, those with telephone service, from all persons and business entities, including VMF, that use their state of the art telephone technology, telephone software, computer telephone auto dialers and telephone equipment to engage in annoying and harassing conduct and activity as described in the Plaintiffs sworn affidavits.

VMF's violation of both State and Federal Statutes as outlined in Plaintiffs Second Amended Complaint is evidence of Negligence Per Se.  There may not be a stated private right of action for VMF's statutory law violations, however this Court can certainly conclude that one is inferred and exists as the Plaintiffs would claim.  In the alternative the Plaintiffs would show that the allegations and evidence of VMF's violations of state and federal statutes as outlined in their Second Amended Complaint and affidavits are sufficient to support their claims against VMF for negligence and negligence per se.

The Plaintiffs details, facts, inferences and allegations contained in their Second Amended Complaint along with the sworn testimony contained in their affidavits support a ruling by this Court that the Plaintiffs have presented a valid claim and request for declaratory and or injunctive relief as against VMF.

The Plaintiffs would show that their negligence and negligence per se causes of action do state grounds upon which relief can be granted especially considering the evidence contained in the Plaintiffs affidavits.  It is black letter law that in a negligence claim, the Plaintiff must show three things: 1) A duty, 2) Breach of this duty and 3) Damages proximately caused and related thereto.

The Plaintiffs would show that there exists sufficient factual evidence and inferences in support of their allegations and claims of VMF's intentional infliction of emotional distress, negligence, negligence per se, violation of the Plaintiffs privacy rights, VMF's illegal disclosure of the Plaintiffs private financial account information and the resulting irreparable harm caused by V.F.'s conduct.  Accordingly, the Defendant's motion to dismiss pursuant to Rule 12(b)(6) should be denied as to all of the Plaintiffs claims and or causes of action.


S/David H. Breen
David H. Breen, #1459
Attorney for the Plaintiffs
1341 44th Avenue North, Suite 206
Myrtle Beach, SC  29577
843-445-9915
davidhbreen@sc.rr.com


Dated: August 23, 2006
Myrtle Beach, South Carolina